UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

KEITH DARRIUS MANDERS,

        Plaintiff,

v.

HEIDI WASHINGTON, et al.,

        Defendants.

_____/

Case No. 1:24-cv-948

Hon. Hala Y. Jarbou

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Sixteen state prisoners initiated this action by filing one complaint on September 6, 2024, and paying the full $405.00 filing fee. *See Evans et al. v. Washington et al.*, No. 1:24-cv-913 (W.D. Mich.). In an order (ECF No. 3) entered on September 13, 2024, the Court severed Plaintiffs' claims into 16 related cases and directed each Plaintiff to file an amended complaint in his own case. The above-captioned action is the result of this severance. The Court received Plaintiff's amended complaint (ECF No. 5) on September 27, 2024.

Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. § 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* amended complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly

irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's amended complaint for failure to state a claim.

## Discussion

### I. Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Marquette Branch Prison (MBP) in Marquette, Marquette County, Michigan. The events about which Plaintiff complains, however, occurred at the Ionia Correctional Facility (ICF) in Ionia, Ionia County, Michigan. Plaintiff sues the following MDOC administrative personnel: Director Heidi Washington, Deputy Director Jeremy Bush, and Mental Health Rights Specialist Sara Heydens. Plaintiff also sues the following ICF personnel: Warden John Davids; Deputy Warden Unknown Bonn; Assistant Deputy Wardens Jim Dunigan and R. Brokaw; Resident Unit Manager Unknown Luther; Prison Counselors Unknown Simon and Walton L. Smith; Psychiatrists Hanna Saad and Unknown Shafer; Psychologists Michelle Norton and Andrew Bookie; and Unit Chief David Maranka.

Plaintiff's amended complaint is scant and consists solely of the following paragraph:

From January 2019 until December 2023 I was held involuntarily in the START Now program [at] Ionia Correctional Facility. This violated my First Amendment, Fourteenth Amendment, and Eighth Amendment [rights] because being in Administrative Segregation/START Now/SHU without my permission and/or consent exasperated my mental health symptoms of PTSD, antisocial disorder, multiple personality disorder[,] and exhibitionism. I wrote numerous grievances and was denied relief. Being held in START Now as a retaliation against writing grievances violates my rights.

(Am. Compl., ECF No. 5, PageID.104.)[1] Plaintiff seeks declaratory and injunctive relief, as well as compensatory, punitive, and nominal damages. (*Id.*, PageID.105.)

---

[1] The mission statement for the MDOC Start Units reads as follows: "To provide a secure general population alternative to administrative segregation while providing programming and other structured and unstructured out of cell activities based upon the prisoner's positive adjustment,

3

## II.   Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr.*

---

with the goal of reintegration into traditional general population." *See, e.g.*, *Randall v. Washington*, No. 1:24-cv-344, 2024 WL 3158258, at *2 (W.D. Mich. June 25, 2024); *Miller v. Davids*, No. 1:20-cv-108, 2022 WL 329844, at *9 (W.D. Mich. Jan. 6, 2022).

4

*Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A.     No Specific Allegations Regarding Each Defendant

After identifying the 15 named Defendants in the caption and his list of parties, Plaintiff fails to specifically reference any one of the Defendants in the body of his amended complaint. Instead, he appears to ascribe his conclusory allegations to the group of Defendants as a whole.

It is a basic pleading essential that a plaintiff attribute factual allegations to particular defendants. *See Twombly*, 550 U.S. at 555–61 (holding that, in order to state a claim, a plaintiff must make sufficient allegations to give a defendant fair notice of the claim). Any "[s]ummary reference to a single, five-headed 'Defendants' does not support a reasonable inference that *each* Defendant is liable . . . ." *Boxill v. O'Grady*, 935 F.3d 510, 518 (6th Cir. 2019) (citation omitted). Moreover,

> [the Sixth Circuit] has consistently held that damage claims against governmental officials alleged to arise from violations of constitutional rights cannot be founded upon conclusory, vague or general allegations, but must instead, allege facts that show the existence of the asserted constitutional rights violation recited in the complaint and what *each* defendant did to violate the asserted right.

*Terrance v. Northville Reg'l Psychiatric Hosp.*, 286 F.3d 834, 842 (6th Cir. 2002) (citation omitted). Therefore, Plaintiff's claims against the named Defendants fall far short of the minimal pleading standards under Rule 8 of the Federal Rules of Civil Procedure and are subject to dismissal. Fed. R. Civ. P. 8(a)(2) (requiring "a short and plain statement of the claim showing that the pleader is entitled to relief"). In other words, Plaintiff has failed to state a claim upon which relief may be granted against any of the individual Defendants. For that reason alone, Plaintiff's amended complaint is subject to dismissal.

5

**B.     First Amendment**

Plaintiff vaguely states that his placement in the ICF Start Now program violated his First Amendment rights. (Am. Compl., ECF No. 5, PageID.105.) The First Amendment provides:

> Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances.

U.S. Const. amend I. Plaintiff vaguely indicates that he was held in the Start Now unit "as a retaliation against writing grievances." (Am. Compl., ECF No. 5, PageID.104.)

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

An inmate has a right to file "non-frivolous" grievances against prison officials on his own behalf, whether written or oral. *Maben v. Thelen*, 887 F.3d 252, 265 (6th Cir. 2018). However, "retaliation" is easy to allege and it can seldom be demonstrated by direct evidence. *See Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005); *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987). "[A]lleging merely the ultimate fact of retaliation is insufficient." *Murphy*, 833 F.2d at 108. "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'" *Harbin-Bey*, 420 F.3d at 580 (quoting *Gutierrez v.*

*Lynch*, 826 F.2d 1534, 1538–39 (6th Cir. 1987)); *see also Murray v. Unknown Evert*, 84 F. App'x 553, 556 (6th Cir. 2003) (holding that in complaints screened pursuant to 28 U.S.C. § 1915A, "[c]onclusory allegations of retaliatory motive with no concrete and relevant particulars fail to raise a genuine issue of fact for trial" (internal quotation marks omitted)); *Lewis v. Jarvie*, 20 F. App'x 457, 459 (6th Cir. 2001) ("[B]are allegations of malice on the defendants' parts are not enough to establish retaliation claims [that will survive § 1915A screening]." (citing *Crawford-El v. Britton*, 523 U.S. 574, 588 (1998))).

Here, Plaintiff does nothing more than use the word retaliation in his complaint. Plaintiff alleges no facts indicating that any of the named Defendants were aware of his grievances and that they continued to hold him in the Start Now unit solely because of those grievances. In short, Plaintiff has not presented any facts to support his conclusory assertion that his placement in the Start Now unit was motivated by Plaintiff's exercise of his First Amendment rights. Accordingly, the Court will dismiss Plaintiff's First Amendment retaliation claims.

### C.     **Eighth Amendment**

Plaintiff also suggests that his placement in the Start Now unit violated his Eighth Amendment rights. (Am. Compl., ECF No. 5, PageID.104.)

The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes. U.S. Const. amend. VIII. Further, the Eighth Amendment protects against the denial of the "minimal civilized measure of life's necessities." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981); *see also Wilson v. Yaklich*, 148 F.3d 596, 600–01 (6th Cir. 1998). However, the Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth

7

Amendment." *Ivey v. Wilson*, 832 F.2d 950, 954 (1987). "Routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347). As a consequence, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id.*

In order for a prisoner to prevail on an Eighth Amendment claim regarding the conditions of confinement, the prisoner must show that he faced a sufficiently serious risk to his health or safety and that Defendants acted with "'deliberate indifference' to inmate health or safety." *Mingus v. Butler*, 591 F.3d 474, 479–80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims). The deliberate indifference standard includes both objective and subjective components. *Farmer*, 511 U.S. at 834; *Helling*, 509 U.S. at 35–37. To satisfy the objective prong, an inmate must show "that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. Under the subjective prong, an official must "know[ ] of and disregard[ ] an excessive risk to inmate health or safety." *Id.* at 837. "[I]t is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Id.* at 842. "It is, indeed, fair to say that acting or failing to act with deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk." *Id.* at 836. "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Id.* at 844.

Although Plaintiff equates the Start Now unit to segregation, placement in segregation, without more, is a routine discomfort that is "part of the penalty that criminal offenders pay for their offenses against society." *Hudson*, 503 U.S. at 9 (quoting *Rhodes*, 452 U.S. at 347). While

8

Plaintiff was presumably denied certain privileges during his confinement in the Start Now unit, Plaintiff does not allege that he was denied basic human needs and requirements. Thus, any denial of privileges as a result of Plaintiff's placement in the Start Now unit cannot establish an Eighth Amendment violation. *See Evans v. Vinson*, 427 F. App'x 437, 443 (6th Cir. 2011); *Harden-Bey v. Rutter*, 524 F.3d 789, 795 (6th Cir. 2008).

Plaintiff suggests that his placement in the Start Now unit "exasperated [his] mental health symptoms of PTSD, antisocial disorder, multiple personality disorder[,] and exhibitionism." (Am. Compl., ECF No. 1, PageID.104.) Plaintiff, however, has not alleged any facts regarding the "deleterious impact" that the conditions in the Start Now unit had on his mental illnesses. *See Snider v. Saad*, No. 1:20-cv-963, 2020 WL 6737432, at *7–8 (W.D. Mich. Nov. 17, 2020). Moreover, Plaintiff has not set forth any facts suggesting that any of the named Defendants were aware of any adverse impact the conditions in the Start Now unit had upon Plaintiff and deliberately ignored Plaintiff's concerns. Plaintiff's Eighth Amendment claims will, therefore, be dismissed as well.

**D.     Fourteenth Amendment**

Plaintiff also vaguely states that his placement in ICF's Start Now unit violated his Fourteenth Amendment rights. (Am. Compl., ECF No. 5, PageID.104.) Plaintiff, however, does not set forth which provision of the Fourteenth Amendment his placement allegedly violated. The Court, therefore, will address whether Plaintiff has set forth procedural and substantive due process claims, as well as equal protection claims.

**1.     Procedural Due Process**

"The Fourteenth Amendment protects an individual from deprivation of life, liberty or property, without due process of law." *Bazzetta v. McGinnis*, 430 F.3d 795, 801 (6th Cir. 2005). To establish a Fourteenth Amendment procedural due process violation, a plaintiff must show that

one of these interests is at stake. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). Analysis of a procedural due process claim involves two steps: "[T]he first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient." *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989) (citations omitted).

The United States Supreme Court long has held that the Due Process Clause does not protect every change in the conditions of confinement having an impact on a prisoner. *See Meachum v. Fano*, 427 U.S. 215, 225 (1976). In *Sandin v. Conner*, the Supreme Court set forth the standard for determining when a state-created right creates a federally cognizable liberty interest protected by the Due Process Clause. 515 U.S. 472, 484 (1995). According to that Court, a prisoner is entitled to the protections of due process only when the sanction "will inevitably affect the duration of his sentence" or when a deprivation imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 486–87; *see also Jones v. Baker*, 155 F.3d 810, 812 (6th Cir. 1998); *Rimmer-Bey v. Brown*, 62 F.3d 789, 790–91 (6th Cir. 1995).

Here, Plaintiff alleges that he was involuntarily placed in ICF's Start Now unit. Plaintiff, however, does not allege that his placement in the Start Now unit affected the duration of his sentence. Moreover, the Supreme Court repeatedly has held that a prisoner has no constitutional right to be incarcerated in a particular facility or to be held in a specific security classification. *See Olim v. Wakinekona*, 461 U.S. 238, 245 (1983); *Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976); *Meachum*, 427 U.S. at 228–29. Although Plaintiff appears to equate the Start Now unit to segregation, he simply alleges no facts to suggest that his placement in the Start Now program was an atypical and significant deprivation. *See, e.g.*, *Jackson v. Berean*, No. 1:18-cv-1075, 2019 WL

1253196, at *11 (W.D. Mich. Mar. 19, 2019) ("[The Start program], which is less restrictive on the whole than the administrative segregation at issue in *Sandin*, necessarily falls short of an atypical and significant hardship."), *aff'd*, No. 19-1583, 2019 WL 6208147 (6th Cir. Nov. 19, 2019); *Dickerson v. Davids*, No. 1:21-cv-401, 2021 WL 3928667, at *4 (W.D. Mich. Sept. 2, 2021). Accordingly, any intended Fourteenth Amendment procedural due process claims will be dismissed.

### 2.     Substantive Due Process

To the extent that Plaintiff intended to raise substantive due process claims, he fails to state such claims. "Substantive due process . . . serves the goal of preventing governmental power from being used for purposes of oppression, regardless of the fairness of the procedures used." *Pittman v. Cuyahoga Cnty. Dep't of Child. & Fam. Servs.*, 640 F.3d 716, 728 (6th Cir. 2011) (quoting *Howard v. Grinage*, 82 F.3d 1343, 1349 (6th Cir. 1996)). Specifically, "[s]ubstantive due process 'prevents the government from engaging in conduct that shocks the conscience or interferes with rights implicit in the concept of ordered liberty.'" *Prater v. City of Burnside*, 289 F.3d 417, 431 (6th Cir. 2002) (quoting *United States v. Salerno*, 481 U.S. 739, 746 (1987)). "Conduct shocks the conscience if it 'violates the decencies of civilized conduct.'" *Range v. Douglas*, 763 F.3d 573, 589 (6th Cir. 2014) (quoting *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 846–47 (1998)).

Here, Plaintiff fails to set forth any facts from which the Court could infer conduct that is sufficiently outrageous to support a substantive due process claim. While it is clear that Plaintiff disagrees with his placement in the Start Now program, his allegations fall short of showing the sort of egregious conduct that would support a substantive due process claim. Accordingly, any intended substantive due process claims against Defendants will also be dismissed.

### 3. Equal Protection

The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike. U.S. Const., amend. XIV; *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). To state an equal protection claim, Plaintiff must show "intentional and arbitrary discrimination" by the state; that is, he must show that he "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).

The threshold element of an equal protection claim is disparate treatment. *Scarbrough v. Morgan Cnty. Bd. of Educ.*, 470 F.3d 250, 260 (6th Cir. 2006). Further, "'[s]imilarly situated' is a term of art—a comparator . . . must be similar in 'all relevant respects.'" *Paterek v. Vill. of Armada*, 801 F.3d 630, 650 (6th Cir. 2015) (quoting *United States v. Green*, 654 F.3d 637, 651 (6th Cir. 2011)).

Here, Plaintiff fails to allege any facts to suggest that he was treated differently than others, let alone that the others were similarly situated. Instead, any allegations of discriminatory treatment are wholly conclusory. Conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983. *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555. Accordingly, the Court will dismiss any intended Fourteenth Amendment equal protection claims.

### Conclusion

Having conducted the review required by the PLRA, the Court determines that Plaintiff's amended complaint will be dismissed for failure to state a claim, under 28 U.S.C. § 1915A(b), and 42 U.S.C. § 1997e(c).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore*, 114 F.3d at 611. Although the Court concludes that Plaintiff's claims are properly dismissed, the Court does not conclude that any issue Plaintiff might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). Accordingly, the Court does not certify that an appeal would not be taken in good faith. Should Plaintiff appeal this decision, the Court will assess the $605.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610–11, unless Plaintiff is barred from proceeding *in forma pauperis*, *e.g.*, by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $605.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A judgment consistent with this opinion will be entered.

Dated: October 11, 2024                     /s/ Hala Y. Jarbou
                                            HALA Y. JARBOU
                                            CHIEF UNITED STATES DISTRICT JUDGE